## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 07-189 (16) (JRT/JSM) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| JOHNNIE JOE LONGS, | |
| Defendant. | |

W. Anders Folk, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Brian N. Toder, **CHESTNUT & CAMBRONNE, P.A.**, 222 South Ninth Street, Suite 3700, Minneapolis, MN 55402, for defendant.

This case is now before the Court on defendant Johnnie Joe Longs' objection to a Report and Recommendation issued by United States Magistrate Janie S. Mayeron on May 23, 2008. The Magistrate Judge recommended denying Longs' Motion to Suppress Evidence, and Longs has objected to that recommendation. The Court has conducted a *de novo* review of defendant's objection, pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.2(b). For the reasons given below, the Court overrules Longs' objection and adopts the Report and Recommendation of the Magistrate Judge.

**BACKGROUND**

The Magistrate Judge held a hearing on Longs' motion, and heard testimony from Sergeant Steve Mosey and Sergeant Ronald Stenerson, both of the Minneapolis Police Department. The Magistrate Judge's recounting of that testimony is summarized below.

**I.   SERGEANT MOSEY'S TESTIMONY**

On February 24, 2005, Sergeant Mosey and Sergeant Stenerson were working with a multi-agency task force that was assigned with locating and arresting juveniles and adults wanted on active arrest warrants. They and other officers went to a home in an effort to arrest an individual with an outstanding warrant. The task force team knocked on the door and were met by a female. After gaining the female's consent to enter the house, the officers asked the female if there were any males present, because the target of their arrest warrant was a man. The woman stated there was a male in the bedroom and granted the officers access to that room.

When Sergeant Mosey entered the bedroom, he observed a male in the bed, with the bedcovers pulled up around his neck. Sergeant Mosey also noticed that the room was very neat, with female clothes and baby clothes and baby items in the room. The male appeared wide awake, and Sergeant Mosey observed no signs that he had recently been asleep. As the officers spoke with the male, he did not move and the covers remained pulled up under his chin. Sergeant Mosey testified that he found this suspicious because it looked as though the man was trying to conceal his identity or maybe hide a weapon. At that point, Sergeant Mosey could not see what the male was wearing or if he was

holding anything in his hands. For Sergeant Mosey's safety, he asked the man to undo the covers and get out of bed.

The man sat up on the edge of the bed, and Sergeant Mosey could see that he was fully clothed with his shoes on. Sergeant Mosey also noticed a man's jacket lying on the bed right next to the man. Sergeant Mosey testified that the fact that the man was in the bed with clothes and shoes on further raised his suspicion that he was trying to hide some kind of weapon or conceal his identity. Sergeant Mosey asked the man if he had any identification on him in order to ascertain whether he was the individual they were seeking. The male stated he had no identification on his person, and Sergeant Mosey gave a quick pat of his outer clothing to make sure he had no obvious wallet or identification or weapon on him.

Sergeant Mosey then reached for the jacket that was on the bed and squeezed the pockets to check for an obvious wallet or hard identification. Sergeant Mosey checked the jacket to see if the individual was the wanted person, and for officer safety reasons, he wanted to make sure there were no weapons in the jacket. At the time, the man was not handcuffed or placed under arrest and the weapons of the officers in the room were still holstered.

When Sergeant Mosey checked the jacket, he felt a piece of plastic and a hard chunk inside the plastic that was irregular inside one of the pockets, which he suspected from his experience and training to be crack cocaine. After Sergeant Mosey felt this item, and without telling the man what he had felt in the jacket, he asked the male if the jacket was his, and he stated that it was not. As it was February and probably less than

20 degrees outside, Sergeant Mosey commented to the man that it was cold to be running around without a jacket, and the individual said he did not have a jacket and that the car in which he had arrived was warm. The individual was ultimately placed under arrest and identified as Longs.

Sergeant Mosey testified that he did not ask Longs to check the jacket himself because Sergeant Mosey did not know whether there were any weapons in the jacket. In Sergeant Mosey's training and experience, it is common to come into contact with individuals carrying weapons, and common for them to keep weapons in an outer garment such as a jacket. It is also common for individuals to deny having identification in the course of a warrant detail because they do not want to get arrested if they are the target of the investigation.

## II.     SERGEANT STENERSON'S TESTIMONY

Sergeant Stenerson testified that he supervised the adult apprehension team involved in the apprehension of defendant, but that he had no independent recollection of the events of that day. Sergeant Stenerson authored a report detailing Longs' arrest. The report indicated that the person detained at the scene matched the description of the person sought for the arrest warrant, and that person was arrested.

## ANALYSIS

Longs argues that he was seized the moment that the police approached him in the bedroom, and that this seizure was not supported by articulable suspicion of criminal activity. Longs argues that the subsequent search of his jacket therefore violated his

Fourth Amendment rights. The prosecution responds that Longs had no legitimate expectation of privacy in the jacket because he expressly abandoned any interest in it. In the alternative, the prosecution argues that there was sufficient reason to suspect that Longs was involved in criminal activity, making a limited seizure of Longs and a pat-down search of the jacket permissible pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). The Magistrate Judge agreed with both arguments advanced by the prosecution, and recommended denying Longs' motion.

Longs now objects to that recommendation. Longs repeats the argument that the officers lacked reasonable suspicion of criminal activity and contests the Magistrate Judge's abandonment analysis on the grounds that his disclaimers occurred only after he had been seized. This Court agrees with the Magistrate Judge that the officers were justified in carrying out a limited warrantless search of Longs and the jacket.[1]

"The Fourth Amendment forbids searches and seizures that are unreasonable, and generally requires police to secure a warrant before conducting a search." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citation and quotation omitted). Under *Terry*, however, an officer may briefly detain a citizen without a warrant if the officer has a "reasonable suspicion" that criminal activity may be afoot. *United States v. Ortiz-Monroy*, 332 F.3d 525, 528 (8th Cir. 2003). In determining whether such an investigatory stop was permissible, this Court looks to the "totality of the circumstances" to determine whether the officers had a "particularized and objective basis for suspecting legal wrongdoing." *Id.* at 528-29 (quotation omitted). "In forming a basis for suspicion,

---

[1] This makes any analysis of whether Longs abandoned the jacket unnecessary.

officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 529. "Once a lawful stop has occurred, officers are entitled to conduct an investigation reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

Here, the information available to the officers when they encountered Longs was sufficient to justify both a "stop" and the limited investigation that followed. The officers were lawfully on the premises with an arrest warrant, and Sergeant Stenerson's report indicated that Longs matched the description of the suspect.[2] Moreover, Longs was awake in bed in a bedroom that did not appear to be his and was covering himself with a sheet in a manner that could potentially conceal weapons or his identity. In light of those facts, the officers had sufficient reason to suspect that Longs was a criminal seeking to evade law enforcement, and had reason to fear for their safety. This provided sufficient grounds for a *Terry* stop, and a request to remove the sheet. Once the sheet was removed, the officers could see that Longs was fully dressed and was wearing shoes. This plausibly added to the officers' suspicions, and justified the limited search of the jacket, which Sergeant Mosey knew to be a common place to store a weapon.[3] *Cf. United States*

---

[2] While defendant criticizes the prosecution for not producing this warrant, the Magistrate Judge credited the officers' description of the warrant after observing their testimony. Only in rare cases will this Court revisit such a determination. *See United States v. Taylor*, No. 04-219, 2004 WL 2066850, at *6 (D. Minn. Aug. 17, 2004).

[3] Longs argues that the search for the weapon was inappropriate because the officers had already searched his person for a weapon. However, it is not clear how the lack of a weapon on his person would have diminished the possibility that there was a weapon in the jacket.

*v. Johnson*, 932 F.2d 1068, 1070 (5th Cir. 1991) (holding that in the context of a *Terry* stop, police may search "containers or other effects within a detainee's reach whenever the police harbor a reasonable suspicion that the detainee may be armed and dangerous"). Accordingly, the Court overrules Longs' objection and adopts the recommendation of the Magistrate Judge. Longs' motion to suppress is denied.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** Longs' objection [Docket No. 684] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 681]. **IT IS HEREBY ORDERED** that Johnnie Joe Longs' Motion to Suppress Evidence [Docket No. 662] is **DENIED**.

DATED:   June 5, 2008                                  s/ John R. Tunheim      _
at Minneapolis, Minnesota.                             JOHN R. TUNHEIM
                                                       United States District Judge

---

The Court also notes that Longs does not argue the officers were unjustified in seizing the crack cocaine if the pat-down search was permissible. In any event, the Magistrate Judge credited Sergeant Mosey's testimony that when he felt a lump in the jacket, he identified it as crack cocaine based on its shape, entitling the officers to seize it pursuant to the "plan touch" doctrine. *See United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005).